UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RICHARD LUPO | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 1:20-cv-00080-JJM-LDA |
| | ) | |
| JOHN D. PRINSCOTT, M.D., | ) | |
| NARRAGANSETT BAY | ) | |
| ANESTHESIA, LLC AND PROSPECT | ) | |
| CHARTERCARE SJHSRI, LLC | ) | |
| Defendants | ) | |

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS

### I. *GENERAL INSTRUCTIONS*

Now that you have heard all the evidence and the arguments of counsel, it is my job to instruct you on the law that is applicable to this case. I will send a written copy of my instructions into the jury room.

### A. PROVINCE OF THE COURT AND JURY

It is your duty as jurors to follow the law as I state it to you and to apply that law to the facts of the case, as you determine those facts to be from the evidence in this case. You are not to be concerned with the wisdom of any rule of law. You are not to single out one instruction alone as stating the law but must consider the instructions as a whole.

Further, nothing I say in these instructions and nothing that I have said or done during the trial is to be taken as an indication that I have any opinion about the facts of the case. I do not. It is not my role to determine the facts; that is your role.

It is always sad when an individual is injured. However, you must perform your duties as jurors without bias or prejudice to any party. All the parties—and the law—expect that you will

carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion.

This case should be considered and decided by you as an action between parties of equal standing in the community, of equal worth, and holding the same or similar stations of life. The race, gender, color, social standing, religion or wealth of the parties, the witnesses, or the attorneys should not influence you. All parties are entitled to the same fair trial at your hands. All parties stand equal before the law and are to be dealt with as equals in a court of justice.

## B.  IDENTIFICATION OF THE PARTIES

In this case, Richard Lupo is the Plaintiff who filed this action with the Court. Throughout these instructions, I may refer to him as "the Plaintiff" or as "Mr. Lupo." The Defendant is Prospect CharterCare SJHSRI, LLC. Throughout these instructions, I may refer to them as "Our Lady of Fatima Hospital" or "Defendant Hospital" or "Defendant."

## C.  EVIDENCE IN THE CASE

In determining the facts of this case, you are to consider only the evidence that has been properly put before you. That evidence consists of the sworn testimony of witnesses, which includes the testimony you heard via read-in and video, and the exhibits that have been admitted into evidence. Evidence that the Court admits is properly before you for your consideration. Evidence that the Court has refused to admit is not a proper subject for your deliberations and you should not consider it when reaching a verdict. Admitted evidence will be available to you in the jury room during your deliberations. All the evidence that the Court admits is appropriate for discussion during your deliberations, regardless of which party called the witness or presented any given item of evidence during the trial.

The fact that the Court admitted evidence over objection should not influence you in determining the weight you should give such evidence. Nor should statements made by counsel, either for or against the admission of such evidence, influence your determination of the weight you will give the evidence, if the evidence was admitted.

Certain things are not evidence, and you may not consider them in deciding what the facts are.

1. Arguments and statements by lawyers are not evidence.

2. Questions and objections by lawyers are not evidence.

3. Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at trial.

### D. **EXPERT OPINION**

In this case you may have heard the opinions of experts. These are witnesses who, by education, training or experience, have become well-versed in medicine, including anesthesiology, and may offer their opinions to assist you in determining the facts of this case. They may also state the reasons for their opinions. There is nothing magical or mystical about an expert's testimony. Simply because a witness has been identified to you as an expert does not mean that you are required to accept what the expert says as true. The opinion of an expert, whether based on personal observations or assumed facts set forth in a hypothetical question, should be considered by you in the same manner as the testimony of any other witness. In other words, it is for you to determine the weight that you will give such opinion and to determine its credibility in the light of all the other evidence. As you deem collectively appropriate, you may fully accept the opinion of an expert, disregard it, or accept only part of it. In doing so, you may consider all the

other factors that I will review with you when I instruct you on the credibility of witnesses generally.

Expert testimony, if it is to have any evidentiary value, must state with some degree of positiveness that a given situation is the result of a given cause. Absolute certainty is not required. But in those cases where expert testimony is relied on to show that, out of several potential causes, a given result came from one specific cause, the expert must report that the result in question "most probably" came from the cause alleged. Probability or likelihood is the key, not possibility.

In addition, you should consider the factual basis for the expert's opinion. If the facts on which the opinion is based are not in accord with the facts as you find them to be, then you should consider that in determining how much, if any, of the expert's testimony you will accept as true. If you decide that the opinion of an expert witness is not based on sufficient education or experience, or if you conclude that the expert's reasons given in support of their opinion are not sound or complete, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion entirely.

### E. CREDIBILITY OF WITNESSES

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. In deciding the facts of this case, you may have to decide which testimony to believe and which testimony not to believe. In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see, hear, or know the things about which the witness testified;

2. the witness' memory;

3. the witness' manner while testifying;

4.  the witness' interest in the outcome of the case and any bias or prejudice that the witness may have;

5.  whether other evidence contradicted the witness' testimony; and

6.  the reasonableness of the witness' testimony in light of all the evidence.

After making your own judgment, you may believe everything a witness says, part of it, or none of it at all. Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying.

### F. EVIDENCE – DIRECT AND CIRCUMSTANTIAL

There are two types of evidence. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence—that is, the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. You are simply required to find the facts in accordance with the preponderance of all the evidence in this case, both direct and circumstantial.

In your consideration of the evidence in this case, you are allowed to make reasonable inferences from witnesses' testimony and the admitted exhibits.

### G. HYPOTHETICAL QUESTIONS

Hypothetical questions may have been asked during this trial. Such questions are posed when a witness is asked to assume certain facts and express an opinion based on those facts.

The value of the answers to these questions depends largely, if not wholly, on whether the statements made in these questions are sustained by what you find the facts to be. If the statements made in these questions are not supported by what you find the facts to be, then the answers to the

questions are entitled to no weight because they are not based on the facts that you have found in this case.

### H. **BURDEN OF PROOF:  PREPONDERANCE OF THE EVIDENCE**

In a civil action, such as this one, the burden is on the Plaintiff to prove every element of his claims by a preponderance of the evidence.  If the Plaintiff fails to establish an element of any of his claims by a preponderance of the evidence, then you should find for the Defendant on that claim.

The Defendant does not have any obligation to prove anything in this case, or disprove that which the Plaintiff asserts or claims. The Plaintiff has the burden of proof, and that burden always remains with the Plaintiff.  Unless the Plaintiff can carry that burden of proof, he is not entitled to your verdict.

To establish by "a preponderance of the evidence" means to prove that something is more probably true than not true.  In other words, if you were looking at opposite ends of a scale, the Plaintiff's evidence would have to make one end of the scale tip to its side.

Preponderance of the evidence is not dependent on the number of witnesses testifying on either side, but rather on the credibility that, in light of all the evidence in this case, you attribute to the witnesses' testimony and the effect that testimony has in causing you to believe in its truth. In determining whether any fact in issue has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them to testify.  You may also consider all exhibits admitted into evidence, regardless of which party produced them.

Where, in your opinion, the evidence on each side is equally balanced, the witnesses on each side are equally credible, and the evidence is just as strong on one side as the other, then Mr. Lupo has not carried his burden of proof by a preponderance of the evidence.

When I say in these instructions that a party has the burden of proof on any proposition, I mean you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not true. This rule does not, of course, require proof to an absolute certainty or even to a near certainty.

## II.    CASE-SPECIFIC INSTRUCTIONS

### A.  NATURE OF THE PLAINTIFF'S CLAIMS

The legal theory by which the Plaintiff is seeking to recover in this trial is negligence. Generally, negligence is the failure of a person, acting in a given set of circumstances, to exercise the degree of care for the safety of another person that a reasonably prudent person would ordinarily exercise in the same or similar circumstances. Negligence may result from not doing something that a reasonably prudent person would do, or it may result from doing something that a reasonably prudent person would not do, under the same or similar circumstances.

Negligence requires the following elements: A Defendant breached the duty of care that she owed to the Plaintiff; and that breach proximately caused the Plaintiffs injuries. Let me now explain the elements of negligence in the context of providing medical services.

### B.  RES IPSA LOQUITUR

The Plaintiff in this case is presenting evidence of negligence through the doctrine of *res ipsa loquitur*. Plaintiff's claims that the incident alleged would not have happened but for the Defendant Hospital's negligence. Plaintiff is asking you to conclude that the Defendant Hospital was negligent simply because an incident occurred. [Salk v. Alpine Ski Shop, 342 A.2d 622, 625 (R.I. 1975); Carnevale v. Smith, 404 A.2d 836 (R.I. 1979); Montori v. Narragansett Electric Co., 402 A.2d 583 (R.I. 1979).]

In order for you to draw that conclusion, Plaintiff relies on the inference of negligence through the doctrine of *res ipsa loquitur*. To warrant an inference of negligence through *res ipsa loquitur*, the Plaintiff must show that three conditions have been met: "(1) the accident or injury must be of a kind which does not occur in the absence of someone's negligence; (2) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (3) the indicated negligence is within the scope of the defendant's duty to the plaintiff." [Parrillo v. Giroux Co., 426 A.2d 1313, 1320 (R.I. 1981); Restatement (Second) Torts § 328D(1) at 156 (1965).] If the Plaintiff satisfies all of the elements of the *res ipsa loquitur* doctrine, it will entitle him to a presumption or inference of negligence. [Carnevale v. Smith, 404 A.2d 836 (R.I. 1979).]

However, if you find that the incident is one which may ordinarily occur in the absence of negligence or if you find that it is at least equally probable that the negligence was that of some third person, or Mr. Lupo himself, then the law does not permit you to find the Hospital Defendant negligence as having been inferentially established under the doctrine. [Carnevale v. Smith, 404 A.2d 836 (R.I. 1979); Parrillo v. Giroux Co., 426 A.2d at 1320.]

Even if you find that the Plaintiff satisfied all of the elements of *res ipsa loquitur,* he still carries the burden of proof. He must still prove, by a preponderance of evidence, that there was a breach of the standard of care, which I will now explain. [Carnevale v. Smith, 404 A.2d 836 (R.I. 1979).]

### 1.  STANDARD OF CARE

The law requires that a medical service provider, whether it be a doctor or hospital, exercise the same degree of professional judgment, diligence and technical skill that is to be expected of a reasonably competent medical practitioner in the same class to which he or she belongs. In other

words, a medical service provider's conduct must be consistent with that of a reasonably competent medical service provider practicing in the same field and acting in the same or similar circumstances given the state of scientific knowledge at the time of the diagnosis and treatment. We call this the recognized standard of care. The recognized standard of care may vary with the circumstances.

It is for you, the jury, to determine from the evidence presented at trial what the recognized standard of care was for the Defendant Hospital agents and employees at the time in question. Once you have determined from the trial evidence what was the recognized standard of care against which the Defendant Hospital agents and employees is to be measured, you must then consider whether the Defendant's conduct fell short of that standard.

In this case, the Plaintiff alleges that the Our Lady of Fatima Hospital was negligent and that such negligence was the proximate cause of his injury. To the extent that a hospital provides care through its agents, servants, and/or employees, such as its physicians, nurses, and doctors, you must evaluate the Defendant Hospital's conduct in the light of what you find to be the degree of care and skill that was expected of a reasonably competent hospital acting in the same or similar circumstances in January 2018.

## 2.  **BREACH OF STANDARD OF CARE**

A hospital is required to adhere to the standard of care. Negligence is a breach of, or deviation from, the standard of care. If a hospital, through its agents, servants and/or employees, breaches the standard of care and that breach of the standard of care proximately caused the Plaintiff's injuries, that hospital is negligent, and you must render a verdict for the Plaintiff. However, if that hospital adheres to the standard of care or the plaintiff cannot establish by a

9

preponderance of the evidence that the hospital breached the standard of care, then the hospital is not negligent, and you must render a verdict for the hospital.

The law does not require a hospital or medical providers to guarantee successful treatment. The legal test is not what hindsight may have revealed or should have been done in light of subsequent conditions. The mere happening of the Plaintiff's injury does not justify any inference that the Defendant Hospital was negligent or that any such negligence proximately caused his injury. The Plaintiff is not entitled to recover merely because the Plaintiff was injured. When a medical provider exercises the same degree of judgment, skill, and care that is commonly possessed by other reasonably competent medical providers, in the same are of practice, they are not negligent in making a diagnosis, choosing a course of treatment, or caring for a patient in a way that later proves to be wrong or unsuccessful so long as that treatment provided was appropriate in light of the standard of care.

Simply put, you must determine whether the Defendant Hospital employees, when providing care to Mr. Lupo in January 2018 exercised the same degree of diligence and skill that is expected of a reasonably competent hospital employee who is engaged in the same type of practice, acting in the same or similar circumstances, and having due regard for the state of scientific knowledge at the time in question.

The standard of care must be established by expert testimony or through the testimony of the Defendant Hospital employees themselves. For instance, if a nurse testified that certain actions were required by the standard of care, you may accept that as evidence of what the standard of care required. If the standard of care offers differing but accepted methods of treatment and the nurse elects one of those accepted methods of treatment, that hospital has not deviated from the standard of care and cannot be held liable.

10

3. **CAUSATION**

Only if you find that the Defendant Hospital deviated from the standard of care and that Mr. Lupo suffered an injury, do you consider the next question, which is whether the Defendant Hospital's deviation caused that injury. There must be a link or connection between the Defendant Hospital's conduct and the Plaintiff's harm to hold the Defendant responsible.

You must further determine whether the Defendant Hospital's breach of duty was the "proximate cause" of the Plaintiff's injuries. The phrase "proximate cause" means a cause in which a natural, unbroken, and continuous sequence produced the harm.

Proximate cause must be established by showing that the Plaintiff's injury would not have occurred but for the Defendant's negligence and that the injury that the Plaintiff claims were the natural and probable consequence of that deviation. [Almonte v. Kurl, 46 A.3d 1, 18 (R.I. 2012).] Stated another way, although there may be other contributing causes, the Defendant will be liable only where their actions were a but for cause of the injury claimed by the Plaintiff.

Proximate cause is the direct, rather than the remote cause of Mr. Lupo's injury. Causes that are merely incidental are not proximate causes. A cause is a proximate cause even if it comes together with or unites with some other cause and produces the injury.

The Plaintiff must prove by a preponderance of the evidence—not conjecture or speculation—that Defendant's conduct was a proximate cause of Mr. Lupo's injury. The Plaintiff must prove proximate cause through the testimony of a medical expert, and when such testimony is presented, it must speak in terms of probabilities rather than possibilities. However, Ms. Lupo is not required to exclude all possibility that the harm occurred without fault on the part of

Defendant Hospital. For example, it is enough if the Plaintiff shows that the harm was more likely due to the negligence of the Defendant Hospital than some other cause.

If you find that the Plaintiff has failed to prove by a preponderance of the evidence that the Defendant's breach of the standard of care proximately caused Mr. Lupo's injuries, then you must render a verdict for Our Lady of Fatima Hospital. However, if you find that the Plaintiff did prove by a preponderance of the evidence that the Defendant Hospital's deviation from the standard of care proximately caused the Plaintiff's injury, then you must render a verdict in favor of the Plaintiff and against that Defendant, and proceed to consider an award of damages, which I will discuss momentarily.

## C. DAMAGES - INTRODUCTION

I will now instruct you on the law of damages. You are instructed on damages so that you may reach a sound and proper determination of the amount you will award as damages, if any, in the event that you find that the Defendant Hospital through its employees breached the standard of care and that such breach was the proximate cause of Mr. Lupo's injury. If you find that the Defendant Hospital through its employees is not liable to the Plaintiff for his injuries, no award of damages can be made. The mere fact that the Court instructs you on the matter of damages is no indication that the Court believes that the Plaintiff is entitled to damages from the Hospital Defendant.

The Plaintiff must prove his damages by a preponderance of the evidence. You may not speculate or guess as to the amount you will award as damages. You must base that amount on your consideration of the evidence before you, and it is required that you determine the precise amount which, in your considered judgment, constitutes a fair and adequate compensation for the damages that you find have been proven.

In Mr. Lupo's claim against the Defendant, which alleges personal injury, there are multiple categories of compensatory damages that you may consider in awarding damages: pain and suffering; bodily injury and impairment; and scarring disfigurement.  Compensatory damages are defined in the law as that amount of money that will, as near as possible, compensate an injured party for the harm or loss that he has sustained.  The rationale behind compensatory damages is to restore a person to the position that he was in prior to the harm or the loss.

### 1. **PAIN AND SUFFERING**

Mr. Lupo is entitled to be compensated for the conscious pain and suffering that he proves, by a preponderance of the evidence, was proximately caused by a breach of the standard of care.

I will define "pain and suffering" for you.  "Pain" means physical pain, the kind resulting from a physical impact or injury.  It includes what we ordinarily think of as physical pain, as well as discomfort, stiffness, and restriction of bodily motion that is caused by the pain or discomfort brought about by moving.  Pain must be conscious pain, that is, something that the Plaintiff was, or is, aware of.  The law does not allow a jury to award damages for pain to a person while that person is, or was, unconscious.

"Suffering," on the other hand, can be equated with what we sometimes call the mental anguish that arises from physical pain or injury to the body.  Suffering means recognizing the pain, the danger resulting from the pain, and the knowledge that the pain and treatment for that pain will continue.  If you find that Mr. Lupo has proven that in addition to physical pain, he has also experienced fear, anguish, nervousness, grief, anxiety, worry, humiliation, embarrassment, shock or terror, Mr. Lupo is entitled to recover for this mental suffering.

There is no particular formula by which to compute damages for a plaintiff's pain and suffering.  There are no objective guidelines by which you can measure the money equivalent of

this element of injury. The only real measuring stick, if it can be so described, is your collective conscience. You should consider all the evidence bearing on the nature of the injuries, the certainty of future pain and the severity and likely duration thereof.

In determining what amount to award Mr. Lupo for pain and suffering, you should consider all the facts and circumstances proven at trial, including:

(a) the type of injury or injuries that Mr. Lupo sustained;

(b) the extent and severity of those injuries;

(c) the length of time Mr. Lupo sought and received medical treatment;

(d) the nature of the medical treatment that Mr. Lupo received; and

(e) whether Mr. Lupo's injuries were temporary or are permanent.

You may also consider Mr. Lupo's testimony in describing the nature of his pain, the intensity of the pain, and how the pain affected his ability to do everyday activities. You may also consider any other evidence showing any objective manifestations of pain such as medical records, other exhibits, and testimony of the witnesses.

In this case, the Plaintiff has alleged that he will continue to experience pain and suffering into the future as a result of the injuries alleged to have been sustained from events of January 17, 2018. To recover for future pain and suffering, Mr. Lupo must prove by a preponderance of the evidence that he is reasonably certain to experience future pain and suffering. You must determine whether there is competent medical evidence establishing to a reasonable certainty that Mr. Lupo will endure pain and suffering into the future as a result of his injuries. And, as with past and present pain and suffering, you must consider the evidence that shows the extent and severity of the pain and suffering that Mr. Lupo is reasonably certain to endure in the future.

## 2.  BODILY INJURY AND IMPAIRMENT

Mr. Lupo is entitled to be compensated for the bodily injury that he sustained as a proximate result of any breach of the standard of care that he has proven.  This injury to the body is different from the pain and suffering that you may find was caused by the bodily injury.  In determining what amount to award the Plaintiff for bodily injury and resulting impairment, there are several factors that you should consider, including:

(a) the type of physical injuries that Mr. Lupo sustained;

(b) the extent and severity of those injuries;

(c) whether the injuries are permanent or temporary;

(d) the length of time that Mr. Lupo required or will require medical treatment or care;

(e) the nature of the medical treatment or care that Mr. Lupo requires or will require;

(f) the degree to which the physical injury and impairment have affected or interfered with Mr. Lupo's day-to-day functioning, including his ability to enjoy his life, relationships, and ordinary activities; and

(g) the degree to which the physical injury and impairment will affect or interfere with Mr. Lupo's day-to-day functioning in the future, including his ability to enjoy his life, relationships, and ordinary activities in the future.

## 3.  SCARRING AND DISFIGUREMENT

Scarring and disfigurement are also a compensable form of damages.  They are an aspect of impairment.  The mental suffering arising from the consciousness of a disfigurement is also compensable.  It is an aspect of the pain and suffering that stems from bodily injury.  The fact that a disfigurement is partially or temporarily concealable either by clothing or ordinary makeup does not automatically preclude an award of damages for the mental suffering resulting from the

disfigurement. The mental suffering arising from the consciousness of a disfigurement does not necessarily disappear when it is concealed. The Plaintiff can still be conscious that the disfigurement exists, as may others with knowledge of Plaintiff's injuries. You may, however, consider whether the disfigurement is or can be concealed in determining the award of damages.

### D. LIFE EXPECTANCY

If you find from the evidence that the Plaintiff's injuries are reasonably certain to be of a permanent nature, you may take into consideration his life expectancy in assessing damages.

### E. INSURANCE

Oftentimes, jurors are tempted to speculate about things such as automobile insurance, medical insurance, death benefits, or other types of insurance or benefits. Jurors will also wonder about attorney's fees and which party will pay them. You are instructed that you must not consider any of these things in deciding the case or in determining what amount, if any, you will award in damages.

## III.    FINAL PROCEDURAL INSTRUCTIONS

Ladies and Gentlemen, in a moment I will dismiss you so that you may commence your deliberations. However, before I do that, I need to give you some instructions about the procedures you must use during your deliberations.

### A. NO OUTSIDE COMMUNICATION

During your deliberations, you must not communicate with or provide any information to anyone outside of the jury room by any means about this case. You may not use any electronic device or media. You may not communicate to anyone any information about this case or conduct any research about this case until I accept your verdict. You can only discuss the case in the jury room with your fellow jurors during deliberations.

## B. <u>EXPERIENCE AND OBSERVATIONS</u>

By giving you these instructions, this Court does not mean to imply that you approach your consideration of the evidence in an intellectual vacuum. You are not required to put aside or to disregard your various life experiences and observations. Those experiences and observations are essential to your exercise of reasonably sound judgment and discretion in your deliberations, and it is your right to consider the evidence in the light of such experiences and observations. Likewise, you didn't check your common sense at the door. It is expected that, among other things, you will exercise your collective common sense in resolving this case.

## C. <u>JUDGE'S OPINION</u>

If, during the course of this trial, or in giving you these instructions, the Court has said or done anything that has caused you to believe it was indicating an opinion as to what the facts in the case are, I instruct you that the Court intended to indicate no such opinion. You should not permit such words or acts, if any, to have any influence whatsoever on your determination of what the facts are.

## D. <u>UNANIMOUS DECISION REQUIRED TO RETURN A VERDICT</u>

Now, for you to return a final verdict, your decision must be unanimous. That means that you cannot return a verdict unless and until all eight of you agree to the verdict.

Therefore, during your deliberations and in your consideration of the evidence, you should exercise reasonable and intelligent judgment. It is not required that you yield your convictions simply because a majority holds to the contrary view, but in pursuing your deliberations you should keep your minds reasonably open so that you will not be precluded or prevented from achieving a unanimous verdict by mere stubbornness. Each vote of each juror is as important as the vote of

any other juror, and you need not give up your sincerely held convictions simply because a majority holds to the contrary.

I am designating juror #\_, as the Foreperson of this jury. M\_. \_\_\_\_\_ \_\_\_\_\_, it will be your responsibility to organize the group and facilitate organized and healthy deliberations. The Foreperson's opinion, voice, or vote, however, is no more meaningful than that of any other juror.

When you are in the jury room, you will be provided with the evidence that has been admitted in this case. It may take us a few minutes to gather it up, but as soon as we do, it will be brought to the jury room.

You will also be given a verdict form. When you have reached a verdict, the Foreperson will fill out that form and sign it. Once the verdict form is complete, you will inform the Court Security Officer.

[REVIEW OF VERDICT FORM]

If, during your deliberations, you deem it necessary to be further instructed or assisted by the Court in any way, the Foreperson should reduce such request or question to writing, sign it, and give it to the Court Security Officer in whose charge you will now be placed. The Officer will then bring such written request to me, and I, in consultation with the attorneys, will determine an appropriate response. Other than this method, please do not attempt to communicate privately or in any other way with the Court or with anyone outside the jury room.

The Defendant,
Prospect Chartercare SJHSRI, LLC,
By its Attorneys,

/s/ *Brian A. Fielding*
Brian A. Fielding, Esq. | R.I. Bar No. 8433
bfielding@adlercohen.com
Kelsey D. Peck, Esq. | R.I. Bar No. 10123
kpeck@adlercohen.com
Adler, Cohen, Harvey, Wakeman, Guekguezian, LLP
One Turks Head Place, Suite 600
Providence, RI  02903
(401) 521-6100 Fax: (401) 521-1001

## CERTIFICATE OF SERVICE

I, Kelsey D. Peck, attorney for the defendant, hereby certify that on July 6, 2023, I served a copy of the foregoing by CM/ECF electronic mail notification to all counsel of record.

/s/ *Kelsey D. Peck*
Kelsey D. Peck